LUCILLE DICK, ADMINISTRATRIX *AD PROSEQUENDUM* AND GENERAL ADMINISTRATRIX OF THE ESTATE OF SHIRLEY SEXTON, PLAINTIFF, v. ATLANTIC CITY MEDICAL CENTER, CHARLES BROMALL, ADMINISTRATOR, AND ARTHUR LEE, M.D., DEFENDANTS.

Superior Court of New Jersey
Law Division—Atlantic County

Decided March 3, 1980.

*Carl Valore* for plaintiff (*Valore, McAllister, Aron & Westmoreland*, attorneys).

*Leonard Horn* for defendant Atlantic City Medical Center (*Horn, Kaplan, Goldberg & Gorny*, attorneys).

*G. Paul Crawshaw* for defendant Lee (*Martin, Crawshaw & Mayfield*, attorneys).

MILLER, J. S. C.

This is a medical malpractice action. The question herein presented is whether defendant Dr. Lee must submit to his deposition being taken before he has had an opportunity to review the report of plaintiff's expert.

The factual background may briefly be stated. This suit arises out of treatment received by plaintiff's decedent in the emergency room of the Atlantic City Medical Center on April 6, 1977. Discovery was initiated by defendant by interrogatories propounded on plaintiff while the complaint was being served. One interrogatory sought copies of plaintiff's proposed expert's reports. In response plaintiff set forth the name of his expert but stated that report to be "not available in that he requires additional facts to be developed on deposition of Dr. Lee" (defendant). Thereafter plaintiff served notice to take defendant's deposition on November 16, 1979. Defendant refused to appear without first obtaining the expert's report. Depositions were rescheduled for two different dates but met with the same objection. Plaintiff then moved for an order suppressing defendant's answer and defenses pursuant to *R.* 4:23–4. In response defendant filed this cross-motion to stay his deposition pending receipt of plaintiff's expert's report.

Without the expert's report defendant contends he will be at a tactical disadvantage at his deposition. At this juncture he claims there are no in-depth allegations regarding negligence or any suggestions as to proper procedures which should have been followed or instructions which should have been given. He argues that he is entitled to have the expert's report with its specific charges of malpractice so that he may know before his deposition is taken what it is plaintiff claims he should have done.

Plaintiff points out that defendant has already answered interrogatories without obtaining a copy of plaintiff's expert's

report and that if a report of plaintiff's expert's were submitted it would be incomplete at best and would have to be supplemented after Dr. Lee's deposition was taken. The applicable rule provides:

> Unless the court upon motion, for the convenience of parties and witnesses and in the interest of justice, orders otherwise, methods of discovery may be used in any sequence *and the fact that a party is conducting discovery, whether by deposition or otherwise, shall not, of itself, operate to delay any other party's discovery.* [R. 4:10-4; emphasis supplied]

This rule, adopted as part of the 1972 revision of the discovery rules, is taken verbatim from *Fed.R.Civ.P.* 26(d), adopted in 1970. While the rule gives the court discretion to vary the sequence of discovery "for the convenience of parties and witnesses and in the interests of justice," its application has not yet been decided by our court. Guidance may, however, be found in federal case law.

Until 1970 the *Federal Rules of Civil Procedure* said nothing about the order in which depositions were to be taken or other discovery devices used. A rule of priority developed by case law, however which allowed the party who first served notice of taking depositions to complete at least the noticed depositions before his opponent could take any depositions. *Warning Lites Co. v. Leggitt*, 32 *F.R.D.* 431, 433 (W.D.Tex.1963); *Shulman Inc. v. Shertz*, 18 *F.R.D.* 94 (E.D.Pa.1955); *Grauer v. Schenley Prods. Co.*, 26 *F.Supp.* 768 (S.D.N.Y.1938). Some courts went beyond this to hold that the priority thus obtained extended to all discovery devices, so that a party who had won priority by serving a notice to take depositions was not required to respond to interrogatories, requests for admission or production of documents until he had completed depositions. *Wright & Miller, Federal Practice and Procedure: Civil*, § 2045. *Solomon R. Guggenheim Foundation v. State Nat'l Bank of Conn.*, 45 *F.R.D.* 31 (D.Conn.1968); *E. I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.*, 23 *F.R.D.* 237 (D.Del.1959).

Other courts carved out an exception to the priority rule when priority was based on service of interrogatories, holding that the rule only applied to depositions. *Struthers Scientific & Int'l Corp. v. General Foods*, 290 *F.Supp.* 122 (S.D.Tex.1968); *Nedd v. Thomas*, 47 *F.R.D.* 551, 554 (M.D.Pa.1969).

In 1970 *Fed.R.Civ.P.* 26(d) was amended to remedy the unfairness caused by strict application of the rule of priority. There is no rule of priority under the amended rule, and except where the court otherwise orders "for the convenience of parties and witnesses and in the interests of justice," the fact that one party is conducting discovery does not delay another party's discovery.

This portion of Rule 26(d) seems merely to make explicit in this context a power that is already provided by the provision for protective orders in Rule 26(c)(2). Thus the procedure for obtaining an order and the establishment of grounds for the order should be the same as for any other protective order.

An order by the court departing from the normal rule that parties may have discovery when and how they desire it may only be made in a particular case. A local court rule cannot give priority in all cases or in certain classes of cases . . . And since Rule 26(d) is based on the belief that "the rule of priority based on notice is unsatisfactory and unfair in its operation", the court should give no weight to priority of notice in passing on a request for a protective order.

Upon a proper showing the court may make whatever order about sequence and timing of discovery the necessities of case require. It may stay the beginning of one examination until after the completion of another or it may provide that each party examine the other for alternating period of equal duration. It may require a deposition to be taken before interrogatories are answered or a document produced . . . The important point is *that these orders are only to be made when and as the convenience of all concerned and the interest of justice require and that they are not intended as a means by which a party can win a technical advantage.* [*Wright & Miller, Federal Practice and Procedure: Civil* § 2047 at 317–318; emphasis supplied]

The 1972 revision of our rules followed suit. As to this point, the comment to R. 4:10–4 is apposite:

As to the timing of discovery, this rule should eliminate the claim heretofore made by some practitioners that the party first serving a notice of the taking of a deposition has the right to complete all of his depositions before any other party may commence taking his depositions.

Discovery—the preparatory phase in the lawsuit—has as its primary objective the exposure and unveiling of the relevant facts of the case. It is the probing for and revelation of the truth, nothing more and nothing less. To treat it as a checker game is to debase the process.

■ Obviously, reason and logic dictate that in most cases it is helpful to adhere to an orderly progression of events, such as interrogatories followed by depositions. This is not mandated, however, and may be varied as counsel deem advisable.

■ It is significant that defendant in his brief cites no authority for his position but instead tenders an argument claiming it is "patently unfair" to permit plaintiff to discover what defendant did before plaintiff has revealed his own expert's position. It is not patently unfair at all. To the contrary, it may well be the only way plaintiff can insure that all the facts come to light. Medical malpractice cases are not noted for the ease in which a case against a doctor or hospital can be developed.

A witness either on deposition or at trial has but one obligation—to speak the truth. If the truth here exculpates defendant doctor, all well and good. He will prevail. If the truth turns out to be that he committed malpractice, so be it. "The truth is always the truth, and telling the truth never hurt any one except insofar as he ought to be hurt." *In re Vince*, 2 *N.J.* 443, 457, 67 *A.2d* 141, 148 (1949). The contrary view turns an inquiry into truth and justice into a poker game and this practice died September 15, 1948.

Plaintiff's motion is granted.