**Thomas G. LANG, an individual, and Swath Ocean Systems, Inc., a corporation, Plaintiffs,**

**v.**

**PACIFIC MARINE AND SUPPLY CO., INC. (d/b/a "Pacific Marine"), a corporation, Pacific Marine and Engineering Science Corp. (d/b/a "Pamesco"), a corporation, and Thompson Metal Fabricators, Inc., a corporation, Defendants.**

**Civ. No. 88–00318 VAC.**

United States District Court, D. Hawaii.

Jan. 11, 1989.

Guy W. Chambers, Townsend & Townsend, San Francisco, Cal., Timothy D. Kelley, Rancho Santa Fe, Cal., Vernon F.L. Char, Damon, Key, Char & Bocken, Honolulu, Hawaii, for plaintiffs.

George Brandt, Lyons Brandt Cook & Hiramatsu, Honolulu, Hawaii, Pasquale Razzano, William Frommer, Curtis Morris & Safford, New York City, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

EZRA, District Judge.

Plaintiffs Thomas Lang ("Lang") and Swath Ocean Systems, Inc. ("SOSI"), the patent owner and licensee, respectively, of U.S. Patent Nos. 3,897,744 (" '744") and 3,623,444 ("'444"), bring this action for declaratory, injunctive, penal and monetary relief against Defendants Thompson Metal Fab Inc. ("Thompson Metal"), a Washington corporation, Pacific Marine and Supply Co., Ltd. ("Pacific Marine"), a Hawaii corporation, and Pacific Marine and Engineering Science Corp. ("PMESCO"), a Hawaii corporation, for threatened infringement. The court has two motions before it brought by Defendants. The first seeks, pursuant to Fed.R.Civ.P. 12(b)(1) and/or (6), dismissal of all five counts of Plaintiffs' complaint. The second, brought under Rule 12(b)(2), seeks dismissal of Plaintiffs' complaint, as to Defendant Thompson Metal only, for lack of personal jurisdiction. For the reasons stated below, Defendants' motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and/or failure to state a claim is granted. With the dismissal of Plaintiffs' complaint, the court does not reach Defendant Thompson Metal's motion to dismiss for want of personal jurisdiction.

## BACKGROUND

Pursuant to a contract with Pacific Marine, Thompson Metal is in the process of manufacturing the hull structure for a swath type vessel which Plaintiffs contend will infringe on one or more of their patents.

Pacific Marine owns U.S. Patent No. 4,174,671 ("'671") entitled "Semi–Submerged Ship" which, it asserts, embodies the swath vessel being built for it by Thompson Metal. In this regard, Pacific Marine has made public announcements in which it has maintained that Donald Higdon and Associates is a designer of the vessel's control systems. The Plaintiffs, holders of patents '744 and '444, also relating to integral components of a swath type vessel, claim that the vessel being constructed by and for Defendants will infringe upon their patents.

Plaintiffs commenced this action on April 25, 1988, at a time when construction of the swath vessel for Pacific Marine was incomplete. Indeed, it is contemplated that the vessel will not be completed and ready for final Coast Guard inspection until February, 1989.[1]

In their complaint, Plaintiffs' assert five separate causes of action. Count One is brought under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* It seeks a declaration that Pacific Marine is "infringing" or "threatening" to infringe Plaintiffs' '744 and '444 patents by reason of Thompson Metal's manufacture of a swath vessel for Pacific Marine. Count Two is based on the general equity power of the Court and seeks an injunction against a "threatened trespass" upon Plaintiffs' patents. Count Three is an action for alleged false patent marking pursuant to 35 U.S.C. § 292. Count Four alleges false representation and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Count Five is brought under Hawaii Rev.Stat. §§ 480–2 and

---

1. Affidavit of Steven C.H. Loui (attached to Defendants' Motion to Dismiss filed June 23, 1988).

2. The Declaratory Judgment Act, 28 U.S.C. § 2201 provides:

481A–3. Defendants now seek dismissal of Plaintiffs' complaint for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted.

## DECISION OF THE COURT

A complaint should not be dismissed " 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Baker v. McNeil Island Corrections Ctr.,* 859 F.2d 124, 127 (9th Cir.1988).

■ Pursuant to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court may receive among the forms of competent evidence affidavits to resolve any factual dispute. *Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1379 (9th Cir.1983); *National Expositions, Inc. v. DuBois,* 605 F.Supp. 1206, 1207–08 n. 2 (W.D.Pa.1985). The consideration of such evidence does not convert a motion to dismiss into one for summary judgment. *Id.*

### *Count One*

■ Defendants argue that Count One should be dismissed because there is no infringement of Plaintiffs' patent and hence, no actual controversy to adjudicate under the Declaratory Judgment Act.[2] "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

Defendants rely on the Ninth Circuit decision in *Swedlow, Inc. v. Rohm & Haas Co.,* 455 F.2d 884 (9th Cir.1972) to support

> In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party ...

their contention that the Declaratory Judgment Act does not contemplate resolution of disputes brought by patent holders involving the threatened infringement of their alleged patent. In *Swedlow*, a patent holder contended that the defendant's building of a plant threatened to infringe upon his patents on a device and process for manufacturing plastic sheets. The Ninth Circuit observed:

> The conventional role of the Declaratory Judgment Act, 28 U.S.C. § 2201, in the patent field is to protect the alleged infringer from threats by a patent owner who is reluctant to subject its patent to adjudication by suing for infringement. The patent owner has a corollary remedy available, since he may protect his rights by a conventional patent infringement suit ... The court sees no compelling reason why the Declaratory Judgment Act, which provides the court with a discretionary procedural remedy, should be used to give a patent owner broader substantive rights than are available under the Patent Statutes.

*Id.* at 885–86.

In following the rationale in *Swedlow*, the United States District Court for the Western District of Washington remarked:

> There is an obvious distinction between the alleged injury of a party threatened with a lawsuit for infringement and the alleged injury of a patent holder. In the typical patent case brought under the

Declaratory Judgment Act, 28 U.S.C. § 2201, the plaintiff asserts his intent and ability to produce a product, which defendant contends is a patent infringement. Courts find a justiciable controversy because to do otherwise would leave plaintiff no option but to produce the products and be sued for infringement. The patent holder on the other hand is injured only if actual infringement occurs. His remedy is provided in section 271.[3]

*D.G. Rung Industries, Inc. v. Tinnerman,* 626 F.Supp. 1062, 1064 (W.D.Wash.1986).[4]

Plaintiffs concede that under the rationale of *Swedlow* the Defendants would likely prevail.[5] However, it is Plaintiffs' contention that *Automation Systems, Inc. v. Intel Corp.,* 501 F.Supp. 345 (S.D.Iowa 1980) controls the resolution of this issue. In *Automation*, the court recognized the principles enumerated in *Proler Steel Corp. v. Luria Brothers & Co.,* 223 F.Supp. 87, 90 (S.D.Tex.1963)[6] that in the "area of patent law declaratory judgment actions are usually vehicles used by an alleged infringer to force a determination of the validity of a patent on the infringing character of its product after the patentee has charged him with patent infringement. A patentee, however, should not be denied the same remedy if the threat of infringement is sufficient to constitute an 'actual controversy.'" *Id.* at 346.[7]

---

**3.** The plaintiff in the above scenario has another option, i.e., not to produce the product. *See e.g., Hanes v. Millard,* 531 F.2d 585, 592 (D.C. Cir.1976). "[I]t was part of the purpose of the Declaratory Judgment Act to prevent owners from suppressing competition by threatening infringement without ever actually bringing the suits that would put their patents to the test." *Id.* Declaratory relief therefore allows a potential infringer to "know in advance whether he may legally pursue a particular course of conduct. The commercial or manufacturing activity he proposes may be of substantial benefit to society, yet it may have to be abandoned if it must be carried out at the risk of liability for patent infringement." *Id.* This "classic and most persuasive reason for granting [declaratory relief, however,] is ... absent" where the patent owner is the plaintiff because the alleged potential infringer has elected to pursue a particular course of conduct in the face of legal challenges by the patent owner. In this scenar-

io, society's opportunity to benefit from the resulting commercial or manufacturing activity remains uninhibited. *Id.*

**4.** *See also AB Volvo v. Eaton–Kenway, Inc.,* 582 F.Supp. 579, 582–83 (N.D.Ohio 1984); *Ecodyne Corp v. Croll–Reynolds Engineering Co.,* 491 F.Supp. 194, 196 (D.Conn.1979); *Pullman v. W.R. Grace & Co.,* 437 F.Supp. 1062, 1066 (W.D. Okl.1976).

**5.** *See* Plaintiffs' Answering Brief to Defendants' Alternative Motions to Strike or Dismiss, *et al.* filed October 20, 1988 ("Plaintiffs' Answering Brief") at 4.

**6.** The *Swedlow* court acknowledged *Proler* but declined to follow it. *See* 455 F.2d at 886.

**7.** The *Automation* court reasoned that "[i]t will be to no one's advantage to wait for a considera-

To support their position that *Automation* controls in this case, Plaintiffs cite *Chemical Engineering Corp. v. Marlo, Inc.*, 754 F.2d 331 (Fed.Cir.1984),[8] where Plaintiffs contend that the Federal Circuit "inferentially, but nevertheless clearly, approved of the ruling in *Automation Systems*," a ruling that is "directly contrary" to the 1972 Ninth Circuit ruling in *Swedlow*.[9]

This court finds Plaintiffs' position unpersuasive. In *Chemical*, the Federal Circuit merely noted that *Automation* had been cited by the plaintiff "for the proposition that a complaint for declaratory judgment of validity in view of threatened infringement states a claim on which relief may be granted." 754 F.2d at 334. However, the validity of that ruling was not before the Federal Circuit in *Chemical*. Indeed, the Federal Circuit dismissed the plaintiff's reference to *Automation* as irrelevant. *Id.*[10]

Moreover, the court notes that the *Swedlow* rule continues to be followed in this Circuit despite the *Chemical* decision. *See e.g., D.G. Rung Industries, supra.*[11] Indeed, the Federal Circuit seems to have itself adopted, by much clearer implication, the *Swedlow* rationale. *See Cordis Corp. v. Medtronic, Inc.*, 835 F.2d 859 (Fed.Cir. 1987).

> In declaratory judgment suits, there are two prerequisites for establishing the existence of a case or actual controversy between the parties: first, the defendant must have engaged in conduct giving rise to a reasonable apprehension on

plaintiff's part that it will face an infringement suit or the threat of one if it commences or continues the activity in question; second, the plaintiff must have actually produced the accused device or have actually prepared to produce it.

*Id.* at 862. *See also International Medical Prosthetics v. Gore Enterprise*, 787 F.2d 572, 575 (Fed.Cir.1986); *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1398–99 (Fed.Cir.1984).

Alternatively, Plaintiffs ask that if this court does not agree with their argument that the Federal Circuit in *Chemical* adopted by implication, or otherwise, *Automation*, it should disregard *Swedlow* as having no precedential value and speculate as to how the Federal Circuit would rule under these facts. In this regard, Plaintiffs correctly cite *South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982), for the proposition that only the body of law established by the Federal Circuit's predecessor courts, i.e., the Court of Claims and the Court of Customs and Patent Appeals, have been formally adopted by the Federal Circuit as precedents.

This court, however, fails to see, as Plaintiffs would have it, any language in *South Corp.* explaining "precisely" that prior decisional law in other circuits are to be disregarded in areas where the Federal Circuit has exclusive appellate jurisdiction. On the contrary, this court notes the concern of the Federal Circuit at the outset of its opinion in *South Corp.* that " '[v]ery weighty considerations underlie the principle that courts should not lightly overrule

---

tion of the infringing character of a product or process until the actual infringement takes place since this only serves to increase the resulting potential economic harm. Thus, immediate review ... provides both parties with a determination of their rights and obligations upon which they can rely in assessing future behavior with respect to the product or process in question." *Id.* at 347.

**8.** The Federal Circuit has been charged with the "duty of increasing doctrinal stability in the field of patent law," *Chemical*, 754 F.2d at 333, and has consequently been granted exclusive jurisdiction over appeals from a final decision of a federal district court in federal patent law cases. *See* 28 U.S.C. § 1295(a).

**9.** *See* Plaintiffs' Answering Brief at 7.

**10.** In so doing, the Court noted, *inter alia,* that *Chemical* did not involve an action for declaratory judgment but rather was an action for damages and injunctive relief under the federal patent laws. *Id.*

**11.** Compare with *Kasper v. Cooper Canada Ltd.,* 688 F.Supp. 347, 351–52 (N.D.Ill.1988) (adopting *Automation* reasoning where the characteristics and construction of an alleged infringing product were determined by virtue of advertisements setting forth features in great detail and representations made to customers that product would be available within several months).

past decisions.'" *Id.* at 1370 (quoting the United States Supreme Court in *Moragne v. State Marine Lines, Inc.*, 398 U.S. 375, 403, 90 S.Ct. 1772, 1789, 26 L.Ed.2d 339 (1970)).

It is further noted that the Federal Circuit has acknowledged that conflicts may exist between the circuits and that "resolution of [such] conflict[s], a major element in [the Federal Circuit's] mission, requires ... a careful, considered, cautious, and contemplative approach." *Id.* at 1371. Accordingly, this court adopts and applies the Ninth Circuit's persuasive rationale in *Swedlow* until otherwise instructed by the Federal Circuit.

Under the *Swedlow* rationale, this court finds that Plaintiffs are essentially seeking an advisory opinion that when Defendants complete the swath vessel, assuming there are no material design or construction changes in the intervening period, such vessel will infringe one or more of Plaintiffs' patents. Under these circumstances, there is no "substantial controversy ... of sufficient immediacy and reality to warrant" consideration of Plaintiffs' claim for declaratory relief. *See AB Volvo*, 582 F.Supp. at 582–83. "Once the [swath vessel] is complete, 'if plaintiff[s] believe[ ] infringement exists, [they] will have an adequate remedy at law in a conventional patent infringe-

ment action.'" *Id.* (quoting *Ecodyne Corp.*, 491 F.Supp. at 196). Consequently, Count One of Plaintiffs' complaint is dismissed.[12]

*Count Two*

■ Plaintiffs' complaint alleges a "threatened trespass upon Plaintiffs' unique property rights, to wit: threatened infringement of the Lang '444 and '744 patents."[13] Defendants argue that it is not clear under what statutory basis this count is founded. Defendants correctly point out that federal patent laws have preempted state law regulating patents and thus Count Two cannot be based upon Hawaii law. *See Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231, 84 S.Ct. 784, 789, 11 L.Ed.2d 661 *reh. denied*, 376 U.S. 973, 84 S.Ct. 1131, 12 L.Ed.2d 87 (1964). Moreover, it follows that if a threatened infringement does not present a justiciable case or controversy for a plaintiff patent holder in a declaratory judgment action, jurisdiction cannot be based upon the Declaratory Judgment Act. Hence, the only conceivable jurisdictional basis for Count Two is under the federal patent laws.

35 U.S.C. § 271 sets forth three types of patent infringement: direct infringement, inducement of infringement and contributory infringement. Plaintiffs allege in their complaint filed on April 25, 1988[14]

---

**12.** This court also notes that its exercise of jurisdiction under the Declaratory Judgment Act is discretionary. *See e.g., Zemel v. Rusk*, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 *reh. denied*, 382 U.S. 873, 86 S.Ct. 17, 15 L.Ed.2d 114 (1965). As a general rule, discretion in a declaratory judgment action is to be "exercised in the public interest" and in such a manner as "to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief." *Eccles v. Peoples Bank*, 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784 *reh. denied*, 333 U.S. 877, 68 S.Ct. 900, 92 L.Ed. 1153 (1948). Relevant factors in the inquiry include, *inter alia*, the availability of alternative remedies, the equity of the conduct of the declaratory judgment plaintiff, and the public importance of the question to be decided. *See* 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil § 2759 at 784 (1973).

Consideration of the above factors weigh sharply against Plaintiffs in this matter. Plaintiffs have an adequate remedy available to them under the federal patent laws when the swath vessel is completed. In addition, the public has

no interest in prejudging whether Defendants' manufacturing activity will in fact infringe upon Plaintiffs' patents if or when the activity is completed. Defendants should be allowed to engage in their manufacturing activity at their own risk. Society is better served because it may benefit from Defendants' manufacturing activity and, if the activity proves to infringe upon Plaintiffs' patents, the federal patent laws stand poised to provide Plaintiffs relief thereby preserving the integrity of the patent system and fulfilling its purpose of promoting the progress of science and the useful arts. *United States v. Masonite Corp.*, 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461 *reh. denied*, 316 U.S. 713, 62 S.Ct. 1302, 86 L.Ed. 1778 (1942).

**13.** Complaint paragraph 23 at 7.

**14.** This "date represents the time from which plaintiff[s'] cause of action is to be determined." *Andco Environmental Processes v. Niagara Environmental*, 204 U.S.P.Q. 652, 654 n. 3 (W.D.N.Y. 1979).

that Thompson Metal is in the process of manufacturing the hull structure of a swath vessel which, when completed, will infringe or contributorily infringe one or more claims of the Lang '444 and '744 patents.

With respect to direct infringement, subsection (a) of 35 U.S.C. § 271 provides: "whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent." Again, at the time Plaintiffs filed their complaint, the swath vessel at issue was under construction and substantially incomplete. The vessel will not be deemed "made" until it "reaches the state of final 'operable' assembly," some six months subsequent to the filing of Plaintiffs' complaint.[15] *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 527–28, 92 S.Ct. 1700, 1706, 32 L.Ed.2d 273 (1972), *reh. denied*, 409 U.S. 902, 93 S.Ct. 94, 34 L.Ed.2d 165 (1974). *See also Decca Ltd. v. United States*, 640 F.2d 1156, 1168, 225 Ct.Cl. 326 (1980), *cert. denied*, 454 U.S. 819, 102 S.Ct. 99, 70 L.Ed.2d 89 (1981). Thus, there can be no direct infringement of Plaintiffs' patents.[16] Moreover, Defendants cannot contributorily infringe where there is no direct infringement. *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 654 (Fed.Cir.1984).

Accordingly, while this court "may grant an injunction 'in accordance with the principles of equity to prevent the violation of any right secured by patent[,]' 35 U.S.C. § 283[, it may] not exercise this power when there is no substantial threat of future infringement.... Without past infringement by the Defendant[s], even an expressed intention to manufacture an infringing item is not a sufficient threat because there is 'no actual controversy.'" *Aluminum Extrusion Co. v. Soule Steel Co.*, 260 F.Supp. 221, 225 (C.D.Ca.1966) (citations omitted). There has been no showing of infringement, past or present, in this case. Plaintiffs have merely demonstrated an apprehension that when Defendants complete the swath vessel such vessel will infringe one or more of Plaintiffs' patents. Therefore, Count Two of Plaintiffs' complaint fails to state a cognizable claim and is therefore dismissed.

*Count Three* [17]

Defendants contend that Count Three of Plaintiffs' complaint fails to state a claim for false marking under 35 U.S.C. § 292.[18] "Section 292 is penal in nature and must be strictly construed." *Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1359 (9th Cir.1980) (citations omitted). To state a cause of action under § 292, Plaintiffs must allege "(1) a marking importing that an object is patented (2) falsely affixed to (3) an unpatented article (4) with intent to deceive the public." *Id.* Plaintiffs allege that the "representation by Defendant Pacific Marine that the swath vessel it is building is 'patented' under a valid or enforceable patent is, on information and belief, believed to be untrue and false." [19]

Section 292 applies only to "unpatented articles." However, Plaintiffs concede that the patent referred to by Pacific Marine in its announcements, '671, was in fact issued November 20, 1979.[20] The '671 patent is therefore entitled to a presumption of validity. *Corona Cord Tire Co. v. Dovan Chemical Corp.*, 276 U.S. 358, 48 S.Ct. 380,

---

**15.** *See* Declaration of Nelson Hall Re: Status of Pacific Marine Swath Vessel Construction filed October 20, 1988.

**16.** *See D.G. Rung Industries*, 626 F.Supp. at 1064 ("Where there has been no making, using or selling of an invention there can be no patent infringement.").

**17.** The Court notes the parties concede that Thompson Metal is not a defendant to this particular cause of action.

**18.** Whoever ... uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public; ... [s]hall be fined not more than $500.00...."

**19.** Complaint paragraph 25 at 7–8.

**20.** *See* Complaint paragraph 13 at 4. The controversy is that when built pursuant to the '671 patent, Pacific Marine's swath vessel will infringe on Plaintiffs' patents. Hence, the real issue here is one of priority among patent owners.

72 L.Ed. 610 (1928). Moreover, when the complaint was filed the vessel was substantially incomplete and therefore, like in patent infringement cases, could not reasonably be said to have constituted an "article" until completed.[21] Under these circumstances, there is no case or controversy over which this court may exercise jurisdiction. Accordingly, the False Marking claim in Count Three of Plaintiffs' complaint is dismissed.

### Count Four

■ Count Four alleges violations of § 43(a) of the Lanham Act based on (1) the allegations of false patent marking in Count Three; and (2) Pacific Marine's statements that Donald Higdon and Associates is a designer of the control systems for Pacific Marine's ship. 15 U.S.C. § 1125(a) provides, *inter alia:*

> Any person who shall ... use in connection with any goods ... any false description or representation ... and shall *cause such goods ... to enter into commerce* ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

(emphasis added).

Plaintiffs argue that Pacific Marine's reference to the Pacific Marine '671 patent in its public announcements falsely suggests exclusivity to the swath vessel and therefore constitutes a violation of the Lanham Act.[22] Plaintiffs' argument was rejected in *Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*, 402 F.Supp. 838 (E.D.N.Y.1975), *aff'd without op.*, 538 F.2d 314 (2nd Cir. 1976). This court finds the rationale in *Tubeco* persuasive. Accordingly, "[w]hether or not the [Pacific Marine] patent de-

scribes [Plaintiffs' patented swath vessel] in whole or in part, it is a presumptively valid patent issued to [Pacific Marine]. In no way is the patent so identified with [Plaintiffs] or its products as to create false impression in the trade that [Pacific Marine] is now the exclusive source of [swath vessels].... '[S]ection 43(a) is intended to reach false advertising violations', not false patent claims." *Id.* at 847 (quoting *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1270 n. 6 (2d Cir.1974)).

In any event, "[e]ven though the Lanham Act supports a broad view of misrepresentations within its reach, it is clearly directed only against the 'false representations of goods ... in interstate commerce.'" *Tubeco*, 402 F.Supp. at 847 (citation omitted). In the instant case, Pacific Marine had not yet completed the building of the swath vessel when Plaintiffs filed their complaint. Furthermore, there have been no allegations of any sales to date. Therefore, "there has been no satisfaction of the essential Lanham Act requirement that 'the goods upon which the false description appears' enter into interstate commerce." *Id.* at 848 (citation omitted). Count Four of Plaintiffs' complaint fails to state a cognizable claim under the Lanham Act.[23]

### Count Five

Count Five alleges violations of Hawaii state law, specifically, Hawaii Revised Statutes §§ 480–2 and 481A–3. This court finds that with dismissal of the federal claims, "dismissal of [the remaining] state claims is also proper." *D.G. Rung Industries*, 626 F.Supp. at 1065 (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218

---

**21.** The provision reads in part "whoever *marks upon,* or *affixes to,* or *uses in advertising in connection with any unpatented article* ...." (Emphasis added). The language of this section clearly requires that the article be in existence.

**22.** Complaint paragraph 28 at 8 (as incorporating paragraphs 13 and 15 at 4–5).

**23.** In their opposition memorandum, Plaintiffs failed to address Defendants' interstate commerce argument. Defendants made alternative

arguments that Plaintiff did address in their opposition memorandum, i.e., Plaintiffs lack standing because they have alleged no actual injury and Pacific Marine's alleged false statements do not relate to the inherent quality of the Defendants' ship, a requirement Defendants assert is essential to state a claim under the Lanham Act. Because this court finds dismissal appropriate based on the preceding discussion, it does not reach Defendants' other arguments.

**1412**

(1966)).[24]

## CONCLUSION

THEREFORE, IT IS HEREBY OR-
DERED that Defendants' Motion to Dis-
miss Plaintiffs' complaint is GRANTED.

---

24. Plaintiffs concede that they are not consum-
ers and thus are not entitled to bring an action
for unfair or deceptive acts or practices under
Hawaii Rev.Stat. § 480–2. Plaintiffs, neverthe-
less, urge this court to allow them to bring an
action under the unfair methods of competition
clause of § 480–2. The court notes, however,
that it has recently held that there is no private
cause of action for unfair methods of competi-
tion under § 480–2. *See Dash v. Wayne,* 700
F.Supp. 1056 (D.Hawaii 1988).